**SIGNED this 12 day of November, 2005.**

_____
LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE
_____

# United States Bankruptcy Court

**Western District of Texas**
**San Antonio Division**

| | |
|---|---|
| IN RE<br><br>GEORGE GERVIN & JOYCE GERVIN<br><br>*DEBTORS* | BANKR. CASE NO.<br><br>98-52186-C<br><br>CHAPTER 7 |
| JOYCE GERVIN<br><br>*PLAINTIFF*<br><br>V.<br><br>CADLES OF GRASSY MEADOWS II, L.L.C.<br><br>*DEFENDANT* | ADV. PROC. NO. 04-5138-C |

**MEMORANDUM DECISION**

CAME ON for trial the foregoing matter. On motion for summary judgment, Defendant was adjudged in contempt for violating Plaintiff's section 524 discharge injunction. A trial was later held to determine damages. The court here concludes that Plaintiff suffered actual compensable damages for emotional distress and attorney's fees, for which judgment will be entered.

## BACKGROUND[1]

George and Joyce Gervin held, between them, a 50 percent interest in the 401 Group Ltd. Partnership, which owned an apartment complex in Tacoma, Washington. In 1989, a judgment was obtained by TCAP (formerly known as Transamerica Corp.) against George Gervin in the 219th District Court of Collin County, Texas, arising out of a loan obligation of George Gervin. Joyce Gervin was neither jointly nor severally liable for either the indebtedness or the resulting judgment. On June 12, 1992, Joyce Gervin, by an assignment and partition agreement between her and George, received her 25 percent interest in the partnership as her sole and separate property. On October 22, 1996, the Texas judgment was registered in Pierce County, Washington. On May 1, 1998, George and Joyce Gervin filed a Chapter 7 bankruptcy case, listing the TCAP judgment in their bankruptcy schedules. Both George and Joyce Gervin received discharges on August 18, 1998, though prior to the discharge, George Gervin agreed to allow TCAP's judgment to ride through, and not be subject to the bankruptcy discharge.

Cadles of Grassy Meadows II, LLC, the Defendant, is the successor-in-interest to the TCAP judgment. Cadles sought to execute upon both George and Joyce Gervin's respective 25% partnership interests, initiating action in Pierce County Superior Court in the State of Washington. Joyce Gervin then filed this declaratory judgment action and complaint on September 24, 2004 to obtain a ruling that Cadles could not execute on her 25 percent partnership interest to satisfy a judgment against George. She also sought a determination that Cadles was in contempt for violating her bankruptcy discharge and an award of damages for any violation that the court found.

---

[1] This portion of the opinion is offered primarily for information purposes, and does not constitute findings of fact. The court previously ruled on these matters by summary judgment. To the extent of any inconsistency between the background facts laid out here and the summary judgment facts in the pleadings, the latter control.

-2-

On May 17, 2005, this court granted partial summary judgment in favor of Plaintiff against Defendant. In relevant part, the court found as a matter of law that Joyce Gervin owns her 25 percent partnership interest as separate property; that Cadles has no judgement lien against or attaching to Joyce's 25 percent partnership interest; that Joyce Gervin has no legal obligation to pay Cadles; that Cadles violated Joyce Gervin's bankruptcy discharge; and that the Cadles was in contempt for violating Joyce Gervin's discharge. *See* May 17, 2005 Order (Doc. #97). The damages issue was subsequently heard at trial held on September 29, 2005. The damages issue was limited to those damages suffered as a result of the violation of the Plaintiff's discharge injunction.

At trial, the Plaintiff presented evidence of emotional distress suffered and attorney's fees incurred in relation to the Defendant's violation of her discharge injunction. What follows are the court's findings and conclusions in support of the an award in favor of Plaintiff.

I. **CIVIL CONTEMPT POWER TO ENFORCE THE DISCHARGE INJUNCTION**

Bankruptcy courts may validly exercise the power to hold parties in civil contempt and issue sanctions in the form of damage awards in order to enforce the discharge injunction.

**A. Bankruptcy courts have civil contempt powers**

As a general proposition, bankruptcy courts may validly exercise the power to hold parties in civil contempt and issue sanctions. The authority arises both by statute and by virtue of the court's inherent authority as a court to enforce its own orders. Section 105(a) gives courts the statutory authority. At least five circuit courts (following Supreme Court authority) and this court's district court have either explicitly or impliedly acknowledged that bankruptcy courts have inherent civil contempt powers or at least the

-3-

inherent power to sanction.[2] To be sure, the stronger source of authority is that conferred by the Bankruptcy Code itself. The First Circuit observed that "§ 105 provides a bankruptcy court with statutory contempt powers, in addition to whatever inherent contempt powers the court may have."[3] The Fifth Circuit in *In re Terrebonne Fuel and Lube, Inc.* followed the lead of five other circuits and held that bankruptcy courts have the statutory authority to conduct civil contempt proceedings pursuant to section

---

[2] *Fellheimer, Eichen & Braverman, P.C., v. Charter Techs., Inc.,* 47 F.3d 1215, 1227-28 (3rd Cir. 1995) (After citing *Chambers v. NASCO*, 501 U.S. 32 (1991), the Third Circuit stated that "[w]e cannot conclude ... that the bankruptcy court abused its discretion by employing its *inherent power* to sanction the entire firm of FE & B." (emphasis added)); *In re Downs*, 103 F.3d 472, 477 (6th Cir. 1996) ("Bankruptcy courts, like Article III courts, enjoy inherent power to sanction parties for improper conduct." (citing the Ninth Circuit's *In re Rainbow Magazine* decision, *infra*, which, in turn, cites *Chambers*)); *In re Jove Eng'g, Inc.,* 92 F.3d 1539, 1553 (11th Cir. 1996) ("Section 105 aside, courts have inherent contempt powers in all proceedings, including bankruptcy, to 'achieve the orderly and expeditious disposition of cases.' " (citing *Chambers* at 43); *In re Rainbow Magazine, Inc.,* 77 F.3d 278, 284 (9th Cir. 1996) ("Congress impliedly recognized [by § 105] that bankruptcy courts have the *inherent power* to sanction that *Chambers* recognized exists within Article III courts." (emphasis added). The Ninth Circuit elaborated further :

> Congress gave bankruptcy courts the power through Rule 9020 but placed certain explicit restrictions on that power. However, Congress did not abrogate or restrict the inherent power to sanction. A reasonable construction of Rule 105 confirms that inherent power. *Chambers* instructs us that absent congressional restriction, inherent powers exist within a court as part of the nature of the institution.
> ....
> Caldwell ... abused the bankruptcy process in bad faith, justifying the sanction imposed under the inherent powers of the bankruptcy court acknowledged by Congress in Rule 105.
>
> *Id*. at 285 (citations omitted) [the restrictions referenced were eliminated when Rule 9020 was amended in 2001; the Advisory Committee Notes state that the issue of the bankruptcy courts' contempt powers was left to statutory and judicial development];

*In re Courtesy Inns, Ltd., Inc.,* 49 F.3d 1084, 1089 (10th Cir. 1994) ("Justice Scalia's dissenting opinion may be read to imply that the Court's holding [in *Chambers*] only applies to Article III courts. We believe, however, that the majority opinion does not limit inherent power to Article III courts ...." (citations and internal quotations omitted). The Tenth Circuit ultimately held "that § 105 intended to imbue the bankruptcy courts with the inherent power recognized by the Supreme Court in *Chambers*." *Id.* (citations omitted); *In re Smyth*, 242 B.R. 352, 361 (W.D.Tex. 1999) (In affirming this court's ruling the district court stated that it "cannot find that the bankruptcy court abused its discretion in exercising *its inherent* or § 105 authority to sanction, either as an alternative or in addition to Rule 11." (citations omitted).

[3] *Bessette v. Avco Fin. Servs., Inc.,* 230 F.3d 439, 445 (1st Cir. 2000) (*rehearing denied* Dec. 15, 2000) (citations omitted).

105(a).[4] Section 105(a) states that:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or prevent an abuse of process.[5]

Applying a plain meaning analysis of § 105, the Fifth Circuit stated that:

> The language of this provision is unambiguous. Reading it under its plain meaning, we conclude that a bankruptcy court can issue any order, including a civil contempt order, necessary or appropriate to carry out the provisions of the bankruptcy code. We find that an order, such as the one entered by the bankruptcy court, which compensates a debtor for damages suffered as a result of a creditor's violation of a post-confirmation injunction under 11 U.S.C. § 1141, was both necessary and appropriate to carry out the provisions of the bankruptcy code.[6]

### B. **Contempt is the appropriate mechanism for enforcing the discharge injunction**

In the case at bar, the defendant was held in contempt for violating the debtor-plaintiff's section 524 discharge. Although the Fifth Circuit has not ruled directly on the application of section 105(a) to a violation of section 524, it did hold in *Terrebonne* that section 105(a) supported the enforcement of section 1141, which affords a discharge for reorganized debtors in chapter 11 cases. *See In re Terrebonne*, *supra*. A debtor who receives a section 1141 discharge *de facto* receives a section 524 discharge, as the

---

[4] *In re Terrebonne Fuel and Lube Inc.*, 108 F.3d 609, 612-13 (5th Cir. 1997) (citing *In re Walters*, 868 F.2d 665, 669 (4th Cir. 1989); *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 284 (9th Cir. 1996); *In re Skinner*, 917 F.2d 444, 447 (10th Cir. 1990); *In re Hardy*, 97 F.3d 1384, 1389 (11th Cir. 1996); *In re Power Recovery Systems, Inc.*, 950 F.2d 798, 802 (1st Cir. 1991) (Bankruptcy Rule 9020(b) provides for a bankruptcy court's ability to issue a contempt order if proper notice is given).

[5] 11 U.S.C. § 105(a).

[6] *In re Terrebonne Fuel,* 108 F.3d at 613.

Fifth Circuit acknowledged in *National Gypsum*.[7] If contempt pursuant to section 105(a) is available to enforce section 1141, there is no logical reason why the same statute is not also available to enforce the statutory injunction afforded in section 524.

## II. **Awarding Damages in a Civil Contempt Action**

The plaintiff in this case requests relief in the form of actual damages, including emotional distress and attorney's fees. Courts are empowered to award damages for both emotional distress and attorney's fees for a section 524 violation.

The Supreme Court has been cited for the proposition that "[c]ivil contempt orders serve either or both of two purposes: (1) to compel or coerce obedience of a court order; and (2) to compensate parties for losses resulting from the contemptor's non-compliance with a court order."[8] The First Circuit elaborated on this proposition as follows:

> [i]n a civil contempt proceeding, a monetary sanction, assessed for the purpose of compensating the complainant for losses sustained by reason of the contemnor's acts, is within the universe of permissible sanctions. Thus, make-whole relief is a commonplace sanction in civil contempt. So too are normal embellishments such as attorneys' fees and costs.[9]

Judge Queenan best summarized the scope of the remedy available when he stated that fulfilling either of the purposes cited by the Supreme Court necessarily means making the injured party whole and "restoring

---

[7] *Insurance Co. of North America v. NGC Settlement Trust & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.)*, 118 F.3d 1056, 1064 (5th Cir. 1997).

[8] *In re Haddad*, 68 B.R. 944, 952 (Bankr. D.Mass. 1987) (citing *United States v. United Mine Workers of America*, 330 U.S. 258, 303-04 (1947)). It is important to note that Judge Queenan's *Haddad* opinion was decided and issued shortly after the constitutionality of the bankruptcy courts was questioned in *Marathon*. Judge Queenan provides a well reasoned analysis of why the bankruptcy courts can validly exercise civil contempt powers without violating the separation of powers doctrine of the Constitution.

[9] *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 78 (1st Cir. 2002) (citations omitted).

the matter to the situation which existed before the contemptor disregarded the court's order."[10] The foregoing authorities confirm that damage awards are both necessary and appropriate in the context of contempt for violation of discharge injunctions. We next examine whether the specific types of damages sought here can be recovered for a violation of the discharge.

### A. Emotional Distress Damages

The leading case regarding emotional distress damages in a section 524 violation case comes out of the bankruptcy appellate panel for the First Circuit. *In re Torres*, 309 B.R. 643, 648 (1st Cir. B.A.P. 2004). That court held that such damages are compensable based upon "the [broad] sweep given § 105(a) by the First Circuit in [*Bessette*]."[11] The B.A.P. upheld the bankruptcy court's reliance on the First Circuit's decision in *Fleet Mortgage Group, Inc. v. Kaneb*[12] which included emotional distress damages as part of "actual damages" under section 362(h) because of the similarities between the automatic stay and the discharge injunction.[13] The B.A.P. noted that despite the Seventh Circuit's contrary position on awarding emotional damages,[14] many other courts have had little difficulty awarding emotional damages

---

[10] *Haddad.* 68 F.3d at 952.

[11] *In re Torres*, 309 B.R. 643, 648 (1st Cir. B.A.P. 2004), citing *Bessette v. Avco Fin. Servs., Inc.,* 230 F.3d 439, 445 (1st Cir. 2000).

[12] *Fleet Mortgage Group, Inc. v. Kaneb*, 196 F.3d 265 (1st Cir. 1999) (stating that "An honest accounting of actual damages under § 362(h) must include ... psychological suffering...." *Id.* at 270).

[13] *Torres*, 309 B.R. at 649. The automatic stay may be thought of as a kind of statutory "preliminary" injunction, sheltering the debtor and the estate during the pendency of the case. The discharge may be thought of as a kind of statutory "permanent" injunction, which comes into place when the case is completed. Hence the similarity noted by *Torres*.

[14] *Aiello v. Providian Fin. Corp.,* 239 F.3d 876 (7th Cir. 2001) (holding that the automatic stay's protection is financial in character, not emotional; thus, the victims of tortious infliction of emotional distress by creditors must seek redress solely through state law remedies. *Id.* at 880).

for violations of the automatic stay and the discharge injunction.[15] *See*, *e.g.*, *In re Perviz*, 302 B.R. 357 (Bankr. N.D. Ohio 2003) ($2,000 award for emotional distress for willful violation of discharge injunction); *In re Bishop*, 296 B.R. 890 (Bankr. S.D.Ga. 2003) ($5,000 award for emotional damages for willful violation of automatic stay); *In re Atkins,* 279 B.R. 639 (Bankr. N.D.N.Y. 2002); *see also Holden v. IRS (In re Holden)*, 226 B.R. 809, 812 (Bankr. D.Vt. 1991) (debtor may recover emotional distress damages for IRS's willful violation of automatic stay).[16] In *Atkins*, emotional distress damages of $30,000 were awarded for violation of a debtor's section 524 discharge injunction.[17] The *Atkins* court too found ample authority for awarding such damages for creditor violations of both section 362 (the automatic stay) and section 525 (debtor protection from discriminatory treatment).[18]

The First Circuit B.A.P. in *Torres* persuasively distinguished decisions out of the Fourth and Eighth Circuits which had denied emotional distress damages. The Fourth Circuit's ruling in *Burd v. Walters,*[19] never really reached the question whether such damages could be awarded as part of a contempt violation – it simply ruled that the party seeking emotional distress damages had itself offered no legal authority to

---

[15] *Torres*, 309 B.R. at 649.

[16] *Id.* at 650 (footnote omitted).

[17] *In re Atkins*, 279 B.R. 639, 649 (Bankr. N.D.N.Y. 2002).

[18] *Id*. at 647-49. The court cited: *In re Taylor*, 252 B.R. 201 (Bankr. N.D.Ala. 2000) (awarding $1,200 for emotional distress for government's violation of § 525); *Matthews v. United States*, 184 B.R. 594, 600 (Bankr. S.D.Ala. 1995) (awarding $3,000 for emotional distress for IRS's violation of § 362); *In re Davis*, 201 B.R. 835 (Bankr. S.D.Ala. 1996) (awading $300 for emotional distress for IRS's violation of § 362); *In re Flynn*, 169 B.R. 1007 (Bankr. S.D.Ga. 1994) (awarding $5,000 for emotional distress for IRS's violation of § 362); and *Fleet v. Kaneb*, 196 F.3d 265 (1st Cir. 1999) (affirming award of $25,000 for creditor's violation of § 362).

[19] *Burd v. Walters (In re Walters)*, 868 F.2d 665, 670 (4th Cir. 1989)

support its claim.[20] The Eighth Circuit's *McBride*[21] decision was overturned based upon sovereign immunity only, meaning that the court never had to address the precise question whether emotional distress damages are compensable incident to a contempt for violating the discharge.[22] The *Torres* court explained that "... a debtor's out-of-pocket expenses and other economic losses will be relatively insignificant with respect to a violation of a discharge injunction ... [in this case], a reasonable relationship [was demonstrated] between the violation of the discharge injunction and the emotional injuries."[23]

While the Fifth Circuit has not expressly ruled on whether emotional distress damages may be awarded for a section 524 violation, it would in all likelihood, follow the persuasive analysis in *Torres*. A simple three step analysis supports this conclusion. First, the Supreme Court in *United Mine Workers of America* held that civil contempt orders and sanctions may compensate the aggrieved parties for losses sustained.[24] Second, compensating for losses sustained logically means "actual" losses, and the Fifth Circuit has held as much.[25] Third, the Fifth Circuit has held that "[a]ctual damages may include damages for mental and emotional distress."[26] Accordingly, the court concludes that emotional distress damages may be recovered as damages for a violation of the bankruptcy discharge.

---

[20] *Torres,* 309 B.R. at 649.

[21] *McBride v. Coleman*, 955 F.2d 571, 577 (8th Cir. 1992).

[22] *Torres*, 309 B.R. at 649.

[23] *Id.* at 649-50.

[24] *United States v. United Mine Workers of America*, 330 U.S. 258, 303-04 (1947).

[25] *Boylan v. Detrio*, 187 F.2d 375, 379 (5th Cir. 1951) (citing *United Mine Workers*).

[26] *Wheeler v. Mental Health and Mental Retardation Authority of Harris County, Texas*, 752 F.2d 1063, 1074 (5th Cir. 1985).

*2. Attorney's Fees*

At trial, the Defendant argued – though without citing any case law authority – that the court was without statutory authority to award attorney's fees under section 524, because that code section, unlike section 362(h), is silent regarding the recovery of attorney fees. Indeed, section 362(h) does contain an express reference to an award of attorneys' fees for violating the automatic stay, while section 524 does not. Section 362(h) was added to the Bankruptcy Code in 1984, at the same time that section 524(c) was amended and no similar attorney's fees provision was added to section 524.[27] Prior to 1984, courts called upon to enforce both injunctions employed traditional contempt remedies, relying on section 105(a) for support.[28] Representative Peter Rodino, then the chair of the House Judiciary Committee, explained that Section 362(h) was added as a *supplement* to the bankruptcy court's power to address violations of the code's statutory injunctions through civil contempt actions. He noted that section 362(h) was added as "an *additional* right of individual debtors and [was] not intended to foreclose recovery under already existing remedies."[29] Those "already existing remedies" were civil contempt actions for violations of the statutory injunctions of the Bankruptcy Code.[30] As the Second Circuit has explained, section 362(h) "granted bankruptcy courts an independent statutory basis, apart from their contempt power, to order sanctions

---

[27] Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, 98 Stat. 353 (1984).

[28] Richard L. Stehl, *Eligibility for Damage Awards Under 11 U.S.C. § 362: The Second Circuit Answers the Riddle–When Does Congress Actually Mean What It Says?*, 65 ST. JOHN'S L. REV. 1119, 1126 and note 38 (1991).

[29] 130 CONG. REC. H1942 (daily ed. Mar. 26, 1984) (emphasis added).

[30] Stehl, *supra*.

against violators of the automatic stay."[31] These authorities amply demonstrate that bankruptcy courts derive their authority to award attorney's fees for violations of the discharge injunction from the broader and well-developed principles that have developed around contempt actions in the federal courts in general. *See* discussion *supra*. This was the practice before the 1984 amendments and continues as the practice today.

Fifth Circuit precedent supports the award of attorney's fees in civil contempt actions, both in general and in the context of bankruptcy in particular. While the Fifth Circuit has not specifically ruled on the point in the section 524 context, it easily affirmed a bankruptcy court's award of $18,357.48 for costs and fees associated with a debtor's defense against a creditor's violation of its chapter 11 discharge in *In re Terrebonne Fuel*.[32] As has already been noted, section 1141 at least duplicates (if not in fact incorporates) the general discharge in section 524.[33] The Fifth Circuit would not likely distinguish between the facts in *Terrebonne* and the facts here simply on grounds that this is a chapter 7 case as opposed to a chapter 11 case. And section 1141 on its face also makes no express provision for the recovery of attorney fees, yet the Fifth Circuit was not deterred in concluding that an award of such fees was nonetheless appropriate compensation for violating that injunction.[34] That conclusion comports with the

---

[31] *In re Crysen/Montenay Energy Co.,* 902 F.2d 1098, 1104 (2d Cir. 1990)); *see also In re Wagner*, 74 Bankr. 898, 903 (Bankr. E.D. Pa. 1987) ("Congress did not intend to abrogate the right to seek civil contempt."). In enacting 362(h), Congress afforded debtors an additional private right of action, overlaying the existing contempt powers already in use by the courts. In that private right of action, Congress specifically authorized recovery of punitive damages, which are not normally compensable in a civil contempt action. *See, e.g., In re Atkins*, 279 B.R. 639, 649 (Bankr. N.D.N.Y. 2002).

[32] *In re Terrebonne,* 108 F.3d at 613.

[33] Chapter five provisions apply in both chapter 7 and chapter 11 cases. *See* 11 U.S.C. § 103.

[34] *In re Terrebonne,* 108 F.3d at 613-14.

-11-

circuit's broader jurisprudence regarding civil contempt orders. In a non-bankruptcy case, the court observed that "[i]n ordering the award of attorneys' fees for compensatory purposes ..., the court is merely seeking to insure that its original order is followed. Otherwise, the benefits afforded by that order might be diminished by the attorney's fees necessarily expended in bringing an action to enforce that order...."[35] The Defendant's position misapprehends the law of contempt generally, and the law of contempt in the Fifth Circuit specifically, and is here rejected. Attorney's fee are an appropriate award for violation of the discharge injunction.

### III. **THE COURT'S AWARD OF REMEDIAL DAMAGES**

It remains to apply the foregoing legal principles to the facts of this case.

#### *A. Emotional Distress Damages*

The Fifth Circuit in *Hitt v. Connell* explains what a plaintiff is required to prove in order to recover damages for emotional distress. In relevant part, the court stated that:

> "hurt feelings, anger and frustration are part of life," and are not the types of emotional harm that could support an award of damages. *Patterson,* 90 F.3d at 940. The plaintiff must instead present *specific* evidence of emotional damage: "[T]here must be a 'specific discernable injury to the claimant's emotional state,' proven with evidence regarding the 'nature and extent' of the harm." *Brady,* 145 F.3d at 718 (quoting *Patterson*, 90 F.3d at 938, 940). To meet this burden, a plaintiff is not absolutely required to submit corroborating testimony (from a spouse or family member, for example) or medical or psychological evidence. *Brady*, 145 F.3d at 718, 720. The plaintiff's own testimony, standing alone, may be sufficient to prove mental damages but only if the testimony is "particularized and extensive" enough to meet the specificity requirement discussed above....[36]

---

[35] *Cook v. Oschner Found. Hosp.,* 559 F.2d 270, 272 (5th Cir. 1977) (internal citations omitted).

[36] *Hitt v. Connell,* 301 F.3d 240 (5th Cir. 2002).

-12-

Plaintiff in this case testified that, during the course of the Defendant's pursuit of her post-discharge, she has felt constantly harassed. She testified that she suffered the kind of emotional distress that she analogized to being chased by a rottweiler. Her testimony was corroborated (although the Fifth Circuit does not require corroboration) by her tax accountant, who said that Joyce was upset, nervous, and called her over 20 times in the course of a year, often late at night, panicked and anxious about Cadles' continued pursuit of her, and the dire impact she believed it would have on her financially. Plaintiff testified that she was especially worried about the large tax liability she believed she would likely face if the Defendant was permitted to foreclose on her partnership interest. Her tax accountant confirmed Joyce's testimony, adding that the potential for tax liability, while not certain, was real.

Plaintiff further testified that she did not sleep (though not literally as Defense counsel incredulously inquired on cross) for over two years. Plaintiff testified that she consulted her physician and was diagnosed with anxiety for which her doctor sought to prescribe medication. Plaintiff testified that she is averse to pharmaceutical medications and instead sought relief from her anxiety through at least three different herbal supplements. Plaintiff testified that during the entire course of these events she has felt detached and despondent. She testified that feeling this way was especially troublesome because she cares for her grandson on a daily basis and has been unable to fully care for him, or fully interact meaningfully with any of her other relatives or friends, without the pressure and stress of the Defendant's unrelenting pursuit incessantly occupying her mind. Plaintiff also testified that she had frequent marital "discussions" with her husband, George Gervin, about the Defendant's pursuit which caused her stress, apparently straining the marriage.

The court is satisfied that the Plaintiff proved that she suffered real and substantial emotional distress

resulting from the Defendant's violation of her discharge. The Plaintiff testified that she would feel compensated completely if she received $100,000. The court believes that awarding the Plaintiff $100,000 would be over-compensating for her actual losses and that if the court did so, it would be awarding punitive damages as compensatory damages. The court in *Atkins* faced a similar dilemma when the debtor there requested $150,000 in compensatory damages.[37] That court held that, while $150,000 might be an appropriate punitive award, it was too large an amount for compensatory damages.[38] Instead, the court awarded $30,000.[39] The court based the award on the facts that the debtor was very stressed out, woke up frequently at night, was in his own world, worried, and very upset because of the IRS's 14 year post-discharge pursuit of him.[40]

In *Fleet*, the First Circuit affirmed an award of $25,000 to a debtor for a wrongful foreclosure action that had been taken under the mistaken belief that the stay had been lifted.[41] After learning of the error, the creditor put the foreclosure "on hold" for six weeks before dismissing the suit.[42] During this time, the foreclosure notice was published in the local paper and the 85 year old widower living in an affluent gated condominium community in Florida avoided socializing and was not invited to social outings.[43] He testified that he did not sleep well, no longer sought socialization nor enjoyed social settings, and was

---

[37] *Atkins*, 279 B.R. at 649.

[38] *Id.*

[39] *Id.*

[40] *Id.* (internal citations to the transcript omitted).

[41] *Fleet*, 196 F.3d at 270.

[42] *Id.* at 267.

[43] *Id.*

constantly worried where he was going to live.[44]

In *Taylor*, the court awarded $1,200 for the government's discrimination against the debtor in violation of § 525.[45] The court found that the plaintiff suffered headaches, lost sleep, lacked concentration, withdrew, and cried, causing her performance as a high school math teacher to suffer.[46] In *Flynn*, the court awarded $5,000 for the IRS's violation of § 362 by its wrongful levy.[47] The court found that the debtor was forced to endure stress of knowing that her checks would bounce, of having to cancel a planned birthday party for her child and the humiliation of being unable to negotiate checks without considerable difficulty.[48] The court found that all of this was compounded by the fact that she knew that she should have been spared these harms because she had been advised by her attorney that Chapter 13 would protect her.[49]

The whole premise of affording debtors a discharge in bankruptcy is to afford the honest debtor a fresh start. A creditor who violates the discharge tramples on the promise Congress made to its citizenry. Little wonder that emotional distress is (and ought to be) a significant component of damages for discharge violations. A debtor who is promised a fresh start is hardly made whole by an order which simply repeats what the statutory injunction already says – stop all further efforts at collection activity. A significant

---

[44] *Id.* at 270.

[45] *Taylor,* 252 B.R. at 204.

[46] *Id.*

[47] *Flynn*, 169 B.R. at 1023.

[48] *Id.*

[49] *Id.*

-15-

component of the fresh start is being free of the kinds of harassment, threats, and anxiety that debtors were suffering before they filed. Threats and harassment are the first and most effective collection devices most creditors employ – far more prevalent and far more cost-effective than formal litigation. These methods work precisely because they inflict emotional distress on debtors, at a sufficient level of pain to motivate debtors to pay money to the creditor to make the pain stop. Outside of bankruptcy, inflicting that pain as a means of debt collection is legitimate (within the parameters of other legal limitations). Once the debtor receives a discharge in bankruptcy, however, that particularly painful device for debt collection is supposed to stop. When a creditor insists on continuing to inflict the same painful methods on a debtor in contempt of Congress' injunction, they must now compensate for the damages caused – and those damages are real. Indeed, no one knows that better than the creditors themselves. They know they are inflicting pain, because they know that's what motivates debtors to pay them to make them go away.

The evidence presented here establishes that Cadles did inflict emotional distress on Joyce Gervin, and did so despite the presence of a statutory injunction that expressly prohibited them from doing so. The damages they inflicted were real and substantial. The court concludes that an award of $25,000 appropriately compensates Joyce Gervin for the emotional distress inflicted on her by Cadles.

### B. Attorney's Fees

In accordance with the local rules for this district, the Plaintiff has submitted her claim for attorney's fees post-trial. The court will award attorney's fees upon consideration of those materials, consistent with the foregoing legal authorities. A separate order will be entered upon that submission, and the judgment rendered will incorporate that award.

## CONCLUSION

The Defendant was held to be in contempt of court for violating Plaintiff's section 524 discharge injunction. The Plaintiff is entitled to recover compensatory damages for emotional distress, and attorney's fees incurred in responding to the Defendant's contempt, as set out in this decision. A form of judgment consistent with this decision will be entered by separate order.

# # #